FONAR CORPORATION, Plaintiff,

v.

**MAGNETIC RESONANCE PLUS, INC. and Robert Domenick, Defendants.**

No. 93 Civ. 2220 (CBM).

United States District Court, S.D. New York.

March 13, 1997.

Scott A. Fields, Melville, NY, for Fonar Corp.

Dennis Reisman, Great Neck, NY, Lateef Mtima, Coudert Brothers, New York City, for Magnetic Resonance Plus, Inc., Robert Domenick.

## OPINION

MOTLEY, District Judge.

Plaintiff Fonar Corporation ("Fonar") makes this motion for (1) judgment as a matter of law pursuant to Rule 50(b), or, in the alternative, for (2) a new trial pursuant to Rule 59(e), or (3) other relief from judgment pursuant to Rule 60(b). For the reasons explored below, this motion is granted in part and denied in part as to Rule 50(b) and granted in part as to Rule 59. The court does not address the motion pursuant to Rule 60(b).

## BACKGROUND

Fonar is a manufacturer and seller of Magnetic Resonance Imaging ("MRI") parts and equipment. Fonar also services its own MRI machines. Counterclaimants Magnetic Resonance Plus, Inc. and Robert Domenick ("MR Plus") are engaged in the business of servicing Fonar MRI machines. This suit was originally brought by Fonar, which alleged that MR Plus had been infringing Fonar's copyrighted software in servicing Fonar equipment. MR Plus filed counterclaims alleging (1) that Fonar had violated § 1 of the Sherman Act by tying the sale of replacement parts, software upgrades, and diagnostic software to a service contract, (2) that Fonar had attempted to monopolize the market consisting of the service of Fonar MR machines in violation of § 2 of the Sherman Act, (3) that Fonar had tortiously interfered with a number of MR Plus' contracts, (4) that Fonar had tortiously interfered with MR Plus' business relations, and (5) that Fonar was liable under the tort of injurious falsehood.

The court granted MR Plus summary judgment as to Fonar's claims by order and opinion dated March 27, 1996. The court held in that opinion that Fonar had failed to define its software or register it properly, so it did not raise a genuine issue of material fact regarding the validity of the copyright. Central to the court's analysis in that case was the Second Circuit's opinion in *Fonar Corp. v. Deccaid Services, Inc.,* 983 F.2d 427 (2d Cir.1993). In that case, Fonar had sued another *competing servicer* of its MRI machines for copyright infringement and had obtained a preliminary injunction from the District Court preventing that company from infringing Fonar's software in the future. In vacating the injunction, the court held that Fonar's definition of its software was too vague to have a preliminary injunction issued in its favor. In its grant of summary judgment, the court took special note of the fact that Fonar continued to cling to that definition in this case.

MR Plus continued to press its counterclaims, however, and a trial of four of the counterclaims was held from December 2, 1996 until December 19, 1996.[1] The trial was bifurcated into a liability phase and a damages phase. During the liability phase, MR plus alleged that Fonar had engaged in five predatory acts that constituted an unlawful attempt to monopolize. These were the pursuit of baseless copyright infringement litigation, the refusal to sell parts, industrial espionage directed against MR Plus, coercing customers into purchasing service contracts with Fonar by charging them exorbitant prices for software upgrades if they did not, and making false statements about MR Plus. The jury ultimately found that there was no separate market restricted to the service of Fonar MRI scanners and that therefore Fonar could not have violated § 2 of the Sherman Act since it lacked market power in the broader market of sales and service of all brands of MRI scanners. The jury also found that Fonar was not liable under the tort of injurious falsehood because no injurious falsehoods attributable to Fonar caused MR Plus pecuniary loss. However,

---

1. The first counterclaim, having to do with a § 1 Sherman Act violation, was voluntarily dropped by MR Plus at a pretrial conference on October 31, 1996. Transcript of Pretrial Conference held on October 31, 1996, at 275–76.

the jury did find that Fonar had tortiously interfered with one of MR Plus' contracts and that Fonar had tortiously interfered with MR Plus' business relations.

■ Seeking to resurrect much of its antitrust case during the damages portion of the trial, MR Plus sought to introduce the rather novel argument that Fonar's predatory acts alluded to above caused it to go out of business, thereby interfering with all of its contracts and business relations (Trial Transcript "Tr." at 1615–16). Thus, MR Plus sought to recover as damages the lost value of its business (Tr. at 1613). However, though MR Plus was permitted to introduce evidence regarding the lost value of its business on the grounds that this may have been damage suffered as a consequence of Fonar's interference, the court also required that MR Plus identify the specific business relationships with which Fonar allegedly interfered and allow the jury to decide the extent of Fonar's interference with those relationships. (Tr. at 1624–26) The names of 34 businesses and other entities were then introduced at the damages phase of the trial by MR Plus' CEO, Dr. Robert Domenick. These names were then placed on a special verdict form and given to the jury when they were deliberating. The jury ultimately found that MR Plus had suffered $21,000 as a direct result of Fonar's tortious interference with MR Plus' contract and $288,175 as a consequential result. In addition, the jury awarded $124,090 as damages suffered as a direct result of Fonar's tortious interference with three of MR Plus' business relationships, and $1.1 million in consequential damages as a result of Fonar's tortious interference with 31 of MR Plus' business relationships. Finally, the jury awarded $800,000 in punitive damages to MR Plus. Judgment was entered on December 26, 1996, and Fonar timely filed a motion for judgment as a matter of law pursuant to Rule 50(b) and for a new trial pursuant to Rule 59.

On January 21, 1997, the Second Circuit vacated this court's grant of summary judgment as to Fonar's copyright infringement claims, holding that the copyright was entitled to a presumption of validity because it was properly registered and that the *Deccaid*

case was not controlling because the issue there was whether a preliminary injunction could be issued for such a vague definition, not whether the underlying copyright was valid. The court acknowledged that Fonar's definition was "flawed and unhelpful" and that it could be difficult if not impossible for MR Plus to prepare a proper defense, but that the proper way for this court to have proceeded would have been to order the disclosure of farther information regarding the allegedly protected software and to issue Rule 37 sanctions, including dismissal if necessary, if such an order was not complied with.

Soon thereafter, Fonar supplemented its Rule 59 motion and moved for relief from judgment pursuant to Rule 60(b)(5) on the grounds that the entire issue of baseless litigation upon which MR Plus relied had to be reexamined in light of the Second Circuit's ruling. The court held a hearing on January 23, 1997 where it set a briefing schedule and required Fonar to post with the court $3 million of its own stock as security pending the court's resolution of this issue.

## DISCUSSION

Fonar moves for judgment as a matter of law or, in the alternative, a new trial because the verdicts holding Fonar liable under the state law torts were against the overwhelming weight of the evidence. Fonar also moves for a new trial pursuant to Rule 59 and relief from judgment pursuant to Rule 60(b) on the grounds that the Second Circuit's opinion vacating this court's dismissal of its copyright infringement claims requires that there be a new trial on these issues.

### I. State Law Claims

#### A. Standards for Rules 50(b) and 59

In order to grant judgment as a matter of law pursuant to Rule 50(b), a court must determine whether "the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor." *Jund v. Town of Hempstead,* 941 F.2d 1271, 1290 (2d Cir.1991); *Pena v. Brattleboro Retreat,* 702 F.2d 322,

323 (2d Cir.1983). Judgment as a matter of law is proper when

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir.1984).

Rule 59 provides that "a new trial may be granted ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." Fed.R.Civ.P. 59. The decision of whether to grant a new trial is committed to the sound discretion of the court. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992), cert. denied, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). In deciding a motion for a new trial, the court is "free to weigh the evidence ... and need not view it in the light most favorable to the verdict winner." *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992). However, a new trial is warranted only if the court is convinced that a jury reached a seriously erroneous result or that the verdict is against the weight of the evidence, making its enforcement a serious miscarriage of justice. *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir.1988); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir.1983).

**B. Tortious Interference with Contract**

■ The jury found that Fonar had tortiously interfered with one contract which MR Plus had with one of its customers, Dr. Sheer. Fonar claims that it is entitled to judgment as a matter of law or a new trial because (1) there was a lack of evidence as to the existence of a valid and enforceable contract between Dr. Sheer and MR Plus and (2) because Dr. Sheer did not breach the contract, even if it existed.

The court holds that there is ample evidence that there was a valid and enforceable agreement between Dr. Sheer and MR Plus.

Both Dr. Sheer as well as Dr. Domenick, the CEO of MR Plus, testified that Dr. Sheer retained Dr. Domenick to do maintenance on his Fonar MRI machine. (Tr. at 517–18, 541–43, 1347). Fonar makes the puzzling assertion that it is *not sufficient evidence* of the existence of a contract that both parties to that contract testify as to its existence. As authority for this seemingly ludicrous assertion, Fonar cites two cases which have held that there must be an *enforceable* contract in order to sustain a tortious interference claim, and since the contracts in those cases would have been governed by the Statute of Frauds, the contract could not be enforceable absent a writing, even if both parties testified as to its existence. *See Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 837 (2d Cir.1980); *Durante Bros. Constr. Corp. v. College Point Sports Ass'n*, 207 A.D.2d 379, 380, 615 N.Y.S.2d 455, 457 (2d Dept. 1994). Needless to say, these cases have no bearing here, where the Statute of Frauds has never been raised by either party.

However, the fact that Dr. Sheer never breached the contract presents a much more difficult problem for MR Plus. MR Plus has taken the position that Fonar's predatory acts alluded to above made it impossible for Dr. Domenick to conduct business, and he was thus forced to discontinue his contracts with people like Dr. Sheer. Thus, Dr. Domenick testified as follows:

> Q: Were you ready, willing and able to continue your relationship with ... Dr. Sheer?
>
> A: We were ready and willing, but we became unable to.
>
> Q: Why is that, sir?
>
> A: Well, basically because Fonar's interference resulted in us becoming insolvent because so many business relationships had been damaged, we couldn't renew contracts, so we had the core of our business just evaporated (*sic*).

Tr. at 1675.

In other words, MR Plus concedes that there was no breach of the contract but rather maintains that Fonar's conduct rendered performance of the contract impossible

and that this is enough to constitute a tortious interference with contractual relations.

There is indeed some authority on which MR Plus may rely in support of this proposition. Some courts have stated that in order to make out a claim for tortious interference with contract, a party either needs to show that there was a breach of the contract by the third party or that the defendant's interference made the contract impossible to perform. *See, e.g., National Football League v. Dallas Cowboys*, 922 F.Supp. 849, 856 (S.D.N.Y.1996); *Museum Boutique Intercontinental, Ltd. v. Picasso*, 886 F.Supp. 1155, 1162–63 (S.D.N.Y.1995); *Maison Lazard v. Manfra, Tordella & Brooks, Inc.*, 585 F.Supp. 1286, 1290–91 (S.D.N.Y.1984); *Goodall v. Columbia Ventures, Inc.*, 374 F.Supp. 1324, 1332 (S.D.N.Y.1974); *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 489 N.Y.S.2d 478, 480, 108 A.D.2d 351 (1st Dep't. 1985).

However, this proposition runs contrary to the rulings of the New York Court of Appeals and the Second Circuit. The Court of Appeals, for example, has held that "[i]n order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of contract by the other party." *Jack L. Inselman & Co. v. FNB Financial Co.*, 41 N.Y.2d 1078, 396 N.Y.S.2d 347, 349, 364 N.E.2d 1119, 1120 (1977). *Inselman* was cited by the Court of Appeals with approval and its holding affirmed as late as March 26, 1996. *NBT Bancorp Inc. et al. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 620–21, 641 N.Y.S.2d 581, 584–85, n. 1, 664 N.E.2d 492 (N.Y.1996) (distinguishing between tortious interference with contract and tortious interference with prospective contractual relations and holding that the former requires that there be a breach of the contract). *See also Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 292 (N.Y.1993) (holding that to sustain a claim under the tort of interference with contractu-

al relations, the plaintiff must, *inter alia*, show that the defendant intentionally induced *the third party* to breach or render performance impossible).

The Second Circuit has concurred in this view, holding that "[u]nder traditional principles of New York law, a party may not recover for tortious inducement of a breach of contract without proving that the contract has been breached." *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir.1990) (citing *Inselman* ). *Accord Enercomp Inc. v. McCorhill Pub. Inc.*, 873 F.2d 536, 541 (2d Cir.1989) ("To recover for tortious interference with a contract under New York law, a complainant must prove ... defendants' improper intentional interference with its performance.... Improper intentional interference is generally evidenced by a tortfeasor inducing or otherwise causing a third person not to perform his contractual obligations to plaintiff"); *CIBC Bank & Trust Co. v. Banco Cent. do Brasil*, 886 F.Supp. 1105 (S.D.N.Y. 1995); *American Express v. Accu–Weather, Inc.*, 849 F.Supp. 233, 241 (S.D.N.Y.1994); Restatement (Second) of Torts § 766 (1979) (stating that in a tortious interference with contract claim, the interference be "with the performance of the contract ... by inducing or otherwise causing the third person not to perform the contract.")

The court adheres to the rulings of New York's highest state court as well as those of the Second Circuit and holds that in order to establish a claim under the tort of interference with contractual relations, a third party must breach the contract after being induced to do so by the defendant.

In this case, as was indicated above, there is no dispute that Dr. Sheer did not breach any contract with Dr. Domenick, but that Dr. Domenick himself became unable to perform the contract because of the allegedly baseless litigation. Therefore, the court grants that portion of Fonar's motion pursuant to Rule 50(b) that relates to the tortious interference with contract claim.[2]

---

**2.** Mr. Plus also claims that Fonar waived its right to argue this point by failing to object to the jury instruction at trial. However, Fonar, in its motion for judgment as a matter of law at the close of the evidence, specifically argued that "a claim

for tortious interference with contract must include a breach of contract by the other party." Tr. at 1401. The parties debated this issue at length at the close of the evidence, Tr. at 1401–03, and Fonar is now only repeating the same

### C. Tortious Interference with Prospective Economic Advantage

In order to sustain a claim under tortious interference with prospective economic advantage, MR Plus needed to establish four elements: (1) the existence of a profitable business relationship, (2) Fonar's interference with that relationship, (3) Fonar's use of dishonest, unfair or improper means, and (4) damage to MR Plus' business relationships. Fonar moves for judgment as a matter of law or for a new trial because it claims that MR Plus has failed to prove at least three of the four elements [3] with respect to at least some of the 31 business relationships identified by the jury. For reasons that will become clear *infra*, the court begins its analysis with the second element.

### 1. Fonar's Interference

■ MR Plus has contended that Fonar's engaging in the five predatory acts alluded to above constituted an interference with MR Plus' business relationships, resulting in the loss of those relationships. Thus, for example, MR Plus argues that when Fonar instituted baseless litigation against MR Plus, MR Plus was no longer able to divert its resources towards the consummation of its business relationships and thus this "interference" led to the demise of MR Plus' business.

It is clear, however, that under New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff. *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir.1995). In *Honickman*, the plaintiffs were distributors of beverages whose business consisted of taking bottles of beverages from bottling companies and delivering them to retailers. The defendant was a bottling company who did not use distributors like plaintiffs but rather relied on his own distribution network. Plaintiff alleged that defendant was seeking to create a monopoly in the bottling market and this would necessarily interfere with plaintiffs' business relationships with the retailers to whom they delivered. In dismissing the claim of tortious interference with prospective business relations, the Second Circuit stated the following:

> The distributors contend that appellees interfered with their relationships with retailers and other final purchasers of soft drinks.... The distributors ... make no allegations that appellees had any contact with the distributors' customers or that appellees tried to convince the customers to make contracts with them rather than the distributors. *It is axiomatic that, in order to prevail on this claim, the distributors would have to show that the appellees intentionally caused the retailers not to enter into a contractual relation with them.*

*Honickman*, 55 F.3d at 768 (2d Cir.1995)(emphasis supplied). *Accord Marilyn Miglin, Inc. v. Gottex Indus.*, 790 F.Supp. 1245, 1254 (S.D.N.Y.1992). MR Plus failed to cite in its opposition memorandum a single case which has held otherwise.

Only one of the predatory acts alleged by MR Plus involved Fonar's direct interference into MR Plus' business relationships; namely, that of industrial spying.[4] MR Plus prof-

---

argument while renewing its Rule 50(b) motion. Clearly, the argument has not been waived.

**3.** Fonar also claims that it has been unfairly prejudiced by the fact that most of the business relationships to which Dr. Domenick testified were brought out at the damages phase of the trial and that it did not have an adequate opportunity to mount a defense as a result. Given that Fonar's motion for a new trial is granted on other grounds, the merits of this contention do not need to be addressed.

**4.** Perhaps realizing the slender reeds upon which its theory of the case is supported, MR Plus argues that some of Fonars other predatory activities were also targeted in one way or another to the third parties in these alleged business relationships. Thus, MR Plus argues, anticompetitive price lists were distributed to customers which coerced them into purchasing Fonar service contracts, and lies and rumors casting aspersions upon MR Plus' ability and integrity were spread by Fonar to customers. This argument fails for a number of reasons. *First of all*, as to the lies and rumors, the jury specifically

fered evidence which showed that a Fonar employee, Mr. Xavier Rodrigo, obtained employment with MR Plus after pretending to have left Fonar over a financial dispute. MR Plus also introduced evidence which showed that Mr Rodrigo gained access to MR Plus' customer list and subsequently contacted some of those customers after he had returned to Fonar, urging them to return to Fonar and offering them large discounts if they did. Among such customers were the Tahoe Imaging Center and Magnetic Imaging of Paris, Texas, both of which were identified by the jury as relationships with which Fonar had tortiously interfered. However, it is clear that there is no evidence regarding Fonar's interference with a significant number of the 31 alleged business relationships between MR Plus and other entities.[5] In fact, MR Plus has never sought to introduce such evidence but, as was mentioned above, has clung to the bizarre notion that Fonar's predatory behavior caused MR Plus to go out of business, thereby "interfering" with its business relationships. As *Honickman* makes clear, however, this does not make a valid tortious interference with business relations claim.

MR Plus argues that Fonar waived its right to argue this point because it did not object to the jury instruction. However, Fonar does not object to the instruction which does, indeed, require that MR Plus prove that Fonar interfered with a particular business relationship; rather, Fonar's objection has to do with what may constitute "interference" as a matter of law. Moreover, Fonar did argue in its motion for judgment as a matter of law at the close of the liability portion of the trial that MR Plus had not demonstrated that Fonar had interfered with any of its business relationships (Tr. at 1374).

## 2. Wrongful Means

■ While it would seem that the proper way for the court to proceed would be to order a new trial with respect to the claim of tortious interference with prospective economic advantage, Fonar argues that it should be granted judgment as a matter of law because even with respect to those customers contacted by Mr. Rodrigo, MR Plus has not shown that Fonar has engaged in "wrongful means" in luring them away from MR Plus.

Under New York law, "[i]f the defendant's interest is intended, at least in part, to advance its own competing interests, the claim [for tortious interference with prospective economic advantage] will fail unless the means employed include criminal or fraudulent conduct." *PPX Enterprises v. Audiofidelity Enterprises*, 818 F.2d 266 (2d Cir. 1987). *See also Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 838 (2d Cir.1980). Fonar claims that when Mr. Rodrigo contacted those person whose names he had obtained from MR Plus' customer lists, the only means he used to lure them back to Fonar was to offer them substantial discounts and that this was neither criminal nor fraudulent.

However, Fonar's myopic view of wrongful means fails to take into consideration the means by which Mr. Rodrigo obtained the customer lists. While the offering of discounts may not be fraudulent, there was ample evidence introduced at trial indicating

found when deciding the injurious falsehood claim that MR Plus had suffered no damage from malicious lies being told about it. Secondly, in order for the anticompetitive price lists to have been a tortious interference, Fonar would have to have distributed them to facilities with whom MR Plus had a business relationship in order to induce those companies to end their relationship, those facilities would have had to have ended their relationship with MR Plus for that reason, and MR Plus would have to have suffered damages as a result. MR Plus introduced no evidence showing that a particular facility had a business relationship with it but terminated that relationship when it saw the price list Finally, of the 31 relationships found by the jury, there are clearly some (for example, Dr. Domenick's lessor and the venture capitalists) that were not affected by customer price lists distributed by Fonar.

5. In some cases, the very notion that Fonar directly interfered with a particular relationship is absurd. For example, one of the entities identified by the jury as having had a business relationship with Dr. Domenick with which Fonar interfered was a group cryptically referred to as "Venture Capitalists." It is inconceivable that Fonar could have contacted these venture capitalists or persuaded them to do anything when Dr. Domenick, who allegedly had a business relationship with them, could not even recall their names.

that Mr. Rodrigo entered MR Plus under false pretenses, obtained a customer list, and subsequently offered discounts to selected customers on the list. Such behavior is clearly fraudulent and constitutes interference by wrongful means.

In light of the foregoing, the court denies Fonar's motion for judgment as a matter of law as to the claim of tortious interference with prospective economic advantage and grants its motion for a new trial on this claim. At the new trial, MR Plus is free to reassert its claim of tortious interference with any of the 31 business relationships, but it will have to show that Fonar directly interfered with these relationships to such an extent that the third party chose not to continue the relationship.

### D. Punitive Damages

The jury also found Fonar liable for punitive damages in the amount of $800,000. Obviously, in light of the fact that there are no longer any compensatory damages, the court vacates the punitive damages award. MR Plus is free to assert another punitive damage claim at a second trial on the tortious interference with prospective economic advantage claim.

### II. The Effect of the Second Circuit's Decision

Because Fonar's motion for a new trial has already been granted, the court need not address the question of whether the Second Circuit's decision vacating this court's grant of summary judgment to MR Plus on the question of copyright infringement requires a new trial. However, it should be clear that had MR Plus not attempted to improperly resurrect its antitrust claim by arguing that the alleged antitrust activity was enough to constitute a state law tort, the Second Circuit's decision would be of no moment. The decision is only relevant to the baseless litigation claim, and this court has indicated in this opinion and during the trial that baseless litigation is not germane to the state law torts asserted by MR Plus. Tr. at 1556.

### CONCLUSION

Thus, for the reasons stated above, the court grants Fonar's motion for judgment as a matter of law pursuant to Rule 50(b) as to the jury's verdict on tortious interference with contract. The court also denies the 50(b) motion as to the jury verdict on tortious interference with prospective economic advantage but grants Fonar's motion for a new trial on this claim pursuant to Rule 59.