**P. KAUFMANN, INC., Plaintiff,**

**v.**

**AMERICRAFT FABRICS, INC., and P.F.C. Converting, Inc., Defendants.**

**No. 01 CIV. 9687(RWS).**

United States District Court, S.D. New York.

April 12, 2002.

---

Phillips Nizer Benjamin Krim & Ballon, New York City (Donald L. Kreindler, Jeremy D. Richardson, of Counsel), for Plaintiff.

Adams & Wilks, New York City (Bruce L. Adams, of Counsel), for Defendant P.F.C. Converting, Inc.

## *OPINION*

SWEET, District Judge.

This action involves a claim of copyright infringement arising under the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and for related claims of injury to business reputation and unfair competition. Defendant P.F.C. Converting, Inc. ("PFC") has counterclaimed, alleging that two letters sent by plaintiff P. Kaufmann, Inc. ("Kaufmann") to retailers were harmful to its business. Kaufmann has submitted a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss PFC's counterclaims on the grounds that they fail to state a cause of action.

For the following reasons, the first counterclaim is dismissed and the second counterclaim is dismissed in part, with leave to amend.

### *Parties*

Kaufmann is a corporation duly organized and existing under the law of the State of New York. It has been involved in the design and sale of home furnishing fabrics for more than forty years.

PFC is a corporation organized and existing under the laws of the State of Georgia. PFC is a textile converter and marketer of upholstery fabrics. PFC performs its marketing through the trade name Magnolia Home Fashions.

### *Facts*

The following facts are taken from PFC's amended counterclaim and documents referred to therein. This section does not include facts from two affidavits

that PFC submitted with its opposition papers to this motion.[1]

PFC manufactures and sells an upholstery fabric called Sheridan (the "Sheridan design"). Kaufmann manufactures and sells an upholstery fabric called Queensland (the "Queensland design"). The underlying lawsuit filed by Kaufmann alleges that the Sheridan design infringes on the Queensland design.

On April 4, 2001, Kaufmann, through its legal counsel, wrote a letter to defendant Americraft Fabrics, Inc. ("Americraft") alleging that PFC's Sheridan design "mimics and copies" Kaufmann's Queensland design. Americraft forwarded the letter to PFC.

On April 10, 2001, PFC responded to the letter. It stated that it was the appropriate addressee of the April 4, 2001 letter, and pointed out to Kaufmann various distinguishing differences between the two designs. It stated:

> The Sheridan design has what is referred to in the art as a five star floral pattern on each of the four corners of a square and one floral pattern centered in the square while Queensland pattern has a different layout which is referred to in the art as a 27 inch, half-drop repeat, side by side. The Queensland design has two large peaches at the bottom of each of its flowers while the Sheridan design has no peaches. The Queensland design has a grouping of cherries overlapping the Queensland's peaches, while the Sheridan design has no cherries or peaches. The Queensland design utilizes large green leaves, while the Sheridan design has small green leaves. The Queensland design utilizes grapes that are all blue in color, while approximately fifty percent of the grapes the Sheridan design utilizes are gray in color. The Queensland design utilizes fifteen screens in its manufacture, while the Sheridan design utilizes only twelve screens.

Kaufmann did not respond to PFC's April 10, 2001 letter.

Over the ensuing months, PFC continued to print fabric using the Sheridan design and to acquire new customers for the Sheridan design.

In June 2001, PFC established a relationship with Corinthian, Inc. ("Corinthian"), in Corinth, Mississippi, a company partially owned by Rooms–To–Go, Inc. ("Rooms–To–Go"), to furnish the Sheridan design for use in manufacturing upholstered furniture for Rooms–To–Go.

On September 13, 2001, Kaufmann wrote a letter to Rooms–To–Go, in Seffner, Florida. The letter included a copy of Kaufmann's Queensland design copyright and stated that the Sheridan design "mimics and copies P. Kaufmann's Queensland design" and "clearly appears to have been copied to make a fabric under the name Sheridan that is incorporated in your furniture." The letter also stated that Rooms–To–Go switched from the Queensland design to the Sheridan design to "switch to a cheaper fabric incorporating a substantially similar design from a different supplier."[2] The letter also demanded that Rooms–To–Go immediately stop selling any furniture incorporating the Sheridan design and threatened legal proceedings, an injunction, and a destruction of Rooms–To–Go's goods on hand.

---

1. This Court may only consider the counterclaim and documents referenced therein. In order to have the two affidavits considered, PFC would have to amend its counterclaim. That may only be done with this Court's permission, which is granted.

2. PFC denies that it makes lower quality goods.

Rooms–To–Go immediately terminated its existing contract for fabrics bearing the Sheridan design and cut off its ongoing business with PFC and use of the Sheridan design in furniture. At that point, Corinthian had been invoiced $50,979.38 in billings for the supply of fabrics bearing the Sheridan design.

On October 17, 2001, Kaufmann wrote a similar letter to Rhodes, Inc. ("Rhodes") in Atlanta, Georgia. The letter also enclosed a copy of the Queensland copyright registration. It stated that the Sheridan design "mimics and copies P. Kaufmann's Queensland design" and "clearly appears to have been copied to make a fabric under the name Sheridan that is incorporated in your furniture." The letter demanded that Rhodes immediately cease selling any furniture incorporating the Sheridan design and threatened legal proceedings, an injunction, and a destruction of Rhodes's goods on hand.

Rhodes immediately terminated its existing contract for fabrics bearing the Sheridan design and cut off its ongoing business with PFC and use of the Sheridan design in furniture. PFC had been supplying the Sheridan design to Albany Industries, Inc. ("Albany"), which manufactures upholstered furniture for Rhodes, since October of 2000. At the time of termination, Albany had been invoiced $144,302.20 in billings for the supply of fabrics bearing the Sheridan design.

In the absence of these letters, PFC believes its contracts to supply upholstery fabric for Corinthian and Albany to use in furniture for Rooms–To–Go and Rhodes would have continued at least two years, if not indefinitely.

On October 26, 2001, Kaufmann, through counsel, alleged in a letter to PFC's counsel and to Americraft that the Sheridan design "mimics, copies and infringes" the Queensland design.

Kaufmann commenced this action on November 2, 2001, asserting causes of action for copyright infringement of the Queensland pattern and related claims of injury to business reputation and unfair competition. PFC's amended answer and counterclaims, filed on March 19, 2002, generally deny the claims and assert two counterclaims for alleged (1) injurious falsehood, and (2) interference with contracts, business relationships, prospective economic advantage, and deceptive trade practices.

Kaufmann filed this motion to dismiss on December 27, 2001, and PFC filed opposition papers on January 18, 2002. The motion was heard and marked submitted on February 6, 2002.

## DISCUSSION

### I. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367.

### II. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993)). Review must be limited to the complaint and documents attached or incorporated by reference thereto. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). In this context, the Second Circuit has held that a complaint is deemed to "include ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000). However, "legal conclusions, deductions, or opinions couched as factual

allegations are not given a presumption of truthfulness." *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 122 (S.D.N.Y.1988). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). A complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996).

### III. *First Counterclaim: Injurious Falsehood*

■ The tort of injurious falsehood consists of (1) the knowing publication of false matter derogatory to the accused party's business; (2) of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with other; and (3) to its detriment. *Waste Distillation Technology, Inc. v. Blasland & Bouck Engineers*, 136 A.D.2d 633, 523 N.Y.S.2d 875, 877 (2d Dep't 1988) (citing Prosser & Keeton, *Torts* § 128). The communication must play a material and substantial part in inducing others not to deal with the plaintiff, with the result that special damages, in the form of specific business dealings, are incurred. *Id.; Nyitray v. Johnson*, 1998 WL 67651, at *13 (S.D.N.Y. Feb.19, 1998) (*citing Waste Distillation*, 523 N.Y.S.2d at 877). Actual losses must be identified and causally related to the alleged tortious act. *L.W.C. Agency, Inc. v. St. Paul Fire and Marine Ins. Co.*, 125 A.D.2d 371, 509 N.Y.S.2d 97 (2d Dep't 1986); *Waste Distillation*, 523 N.Y.S.2d at 877.

Kaufmann alleges that PFC has failed to allege (1) that the statements were knowingly false, (2) that the letters were sent as a calculated effort to stop others from doing business with PFC, and (3) its damages with specificity.

■ PFC claims that it met the requirement of intent by alleging that Kaufmann engaged in "bad faith silence." PFC cites to a patent case, where the alleged infringer claims that the plaintiff was estopped from prosecuting the action by bad faith silence. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1043–33 & n. 18 (Fed.Cir.1992). In such a situation, the silence must be "sufficiently misleading" to induce the infringer to infer that the patentee has abandoned his patent claims. *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1573–74 (Fed.Cir.1987). In the counterclaim, PFC states that after Kaufmann's silence after the April 10, 2001 letter "PFC considered, and was justified in considering, P. Kaufmann's silence to mean that P. Kaufmann accepted PFC's explanation of the differences in the respective designs, and the matter was closed." It is improper to determine at this time whether this assumption was reasonable.

The "bad faith silence" does not, however, go to the requirement of this cause of action that the statement be "knowingly false." "Bad faith silence" is most concerned with the state of mind of the alleged infringer—thinking that her actions in continuing to infringe are justified—rather than the infringee. Here, PFC must show that the alleged infringee, Kaufmann, knew that its allegations about the Sheridan design to Rooms–To–Go and Rhodes were false. The fact that Kaufmann received a letter distinguishing the two patterns does not go to show that

Kaufmann believed that letter. Kaufmann's writing to the retailers and pursuing this litigation suggest that it did not, in fact, believe the letter.

Moreover, PFC fails to allege that Kaufmann wrote the two letters as a calculated effort to stop others from doing business with PFC. The letters did not refer to the manufacturer or supplier of that design alleged to infringe, nor cast aspersions on PFC. From the counterclaim, an intent could be inferred that Kaufmann sought to have Rooms–To–Go and Rhodes stop carrying the Sheridan design. However, an inference is not warranted that Rooms–To–Go and Rhodes would stop ordering furniture from Albany and Corinthian, who in turn would stop requesting fabric (other than the Sheridan print) from PFC on the basis of the two letters alone.

This first counterclaim is therefore dismissed.

## IV. *Second Counterclaim*

### A. *Tortious Interference with Contract*

 Under New York law, a claim for tortious interference with contract requires (1) the existence of a valid contract between the aggrieved party and a third party; (2) the alleged tortfeasor's knowledge of the contract; (3) the alleged tortfeasor's improper intentional interference with its performance without justification; and (4) damages. *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956); *Snyder v. Sony Music Entertainment*, 252 A.D.2d 294, 298–99, 684 N.Y.S.2d 235, 238–39 (1st Dep't 1999); *Enercomp, Inc. v. McCorhill Pub. Inc.*, 873 F.2d 536, 541 (2d Cir.1989). Improper intentional interference is generally evidenced by a tortfeasor inducing or otherwise causing a third person not to perform his contractual obligations to the aggrieved

party. *Enercomp*, 873 F.2d at 541 (citations omitted).

Kaufmann alleges that PFC failed (1) to identify the existence of any contract between it and a third party; (2) to allege that Kaufmann had knowledge of such contracts; (3) to allege that Kaufmann was motivated by improper intent.

PFC fails to allege "intentional interference without justification." The mere "threatening nature of the two letters" is insufficient. The letters requested only what an entity seeking to protect its pattern would do.

Moreover, PFC's contract was with Albany and Corinthian, not with Rhodes and Rooms–To–Go. The counterclaim nowhere alleges that the two letters interfered or otherwise affected the contracts between PFC and Albany and Corinthian. The counterclaim does not specify if those contracts were contingent on the acceptance of Rooms–To–Go and Rhodes of furniture bearing the Sheridan upholstery. Nor does it specify whether the Sheridan design is its only design, or whether it has other designs that are the subject of contracts with Albany, Corinthian, and others.

This portion of the counterclaim is therefore dismissed, with leave to amend.

### B. *Tortious Interference with Economic Relations*

 A complaint alleging tortious interference with economic relations must allege (1) a valid contract or prospective contractual relationship, (2) defendant's knowledge of such relationship, (3) intent to interfere, and (4) damages. *Wrenn v. New York City Health and Hospitals Corp.*, 104 F.R.D. 553, 558 (S.D.N.Y.1985); *Demalco Ltd. v. Feltner*, 588 F.Supp. 1277, 1280 (S.D.N.Y.1984). This also fails for failing to allege the requisite intent and for failing to allege an interference with its

relationship with Albany and Corinthian, as discussed above.

## C. *Tortious Interference with Prospective Economic Advantage*

■ The elements of a cause of action for tortious interference with prospective economic advantage are: (1) existence of a profitable business relationship; (2) the tortfeasor's interference with that relationship; (3) the tortfeasor's use of dishonest, unfair, improper, or wrongful means; and (4) damage to the business relationship. *Waste Services, Inc. v. Jamaica Ash and Rubbish Removal Co.*, 262 A.D.2d 401, 691 N.Y.S.2d 150 (2d Dep't 1999); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.Supp. 477 (S.D.N.Y.1997).

■ A plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by "wrongful means" or that defendant acted for the sole purpose of harming the plaintiff. *Snyder*, 684 N.Y.S.2d at 239. "Wrongful means" includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and economic pressure. *Id.* (*citing Guard–Life v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445).

The only evidence of wrongful means offered by the plaintiff is the alleged false statement in the two letters from Kaufmann. However, it has already been concluded above that Kaufmann has established as a matter of law that no injurious false statement occurred. As PFC has failed to submit evidence of some other tortious conduct by Kaufmann, the wrongful means requirement has not been met.

## D. *Deceptive Trade Practices*

■ Although Kaufmann lists "Deceptive Trade Practices" as part of the counterclaim that it opposes, Kaufmann nowhere addresses the subject. In its memorandum of law in support of its motion to dismiss the counterclaims, Kaufmann makes a general statement that PFC's "hodge-podge of causes of actions" in the second counterclaim boil down to "theories of tortious interference with contract and tortious interference with prospective economic advantage." Mem. at 11. However, there does appear to be a cause of action for deceptive trade practices under New York law separate from those addressed in Kaufmann's motion to dismiss. Its elements are that (1) the alleged practice was misleading in a material respect; and (2) the claimant was injured. *Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294, 1306 (E.D.N.Y. 1997). In the absence of any argument on the topic by Kaufmann, therefore, that portion of the counterclaim is not dismissed.

## V. *Leave to Amend*

■ Fed.R.Civ.P. 15(a) requires that "leave [to amend] shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). When a motion to dismiss is granted, "the usual practice is to grant leave to amend the complaint." 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed.1989); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) (same rule for complaints dismissed under Rule 9(b)). Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground. *Foman*, 371 U.S. at 182, 83 S.Ct. 227. PFC may amend its counterclaim to address the deficiencies listed above.

### *Conclusion*

For the following reasons, the first counterclaim and the portions of the second

counterclaim alleging tortious interference with contract, tortious interference with economic relations and tortious interference with prospective economic advantage are dismissed. The portion of the second counterclaim alleging deceptive trade practices is not dismissed. PFC has leave to amend the counterclaims.

It is so ordered.