**P. KAUFMANN, INC., Plaintiff,**

v.

**AMERICRAFT FABRICS, INC., and P.F.C. Converting, Inc., Defendants.**

**No. 01 Civ. 9687(RWS).**

United States District Court, S.D. New York.

Nov. 19, 2002.

---

Phillips Nizer Benjamin Krim & Ballon, New York, NY, By: Donald L. Kreindler, Jeremy D. Richardson, for Plaintiff, of counsel.

Adams & Wilks, New York, NY, By: Bruce L. Adams, for Defendant P.F.C. Converting, Inc., of counsel.

## OPINION

SWEET, District Judge.

This action involves a claim of copyright infringement arising under the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and for related claims of injury to business reputation and unfair competition. Defendant P.F.C. Converting, Inc. ("PFC") has counterclaimed, alleging that two letters sent by plaintiff P. Kaufmann, Inc. ("Kaufmann") to retailers were harmful to its business. Kaufmann has moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss PFC's counterclaims on the grounds that they fail to state a cause of action.

For the following reasons, Kaufmann's motion is granted.

### Parties

Kaufmann is a corporation duly organized and existing under the law of the State of New York. It has been involved in the design and sale of home furnishing fabrics for more than forty years.

PFC is a corporation organized and existing under the laws of the State of Georgia. PFC is a textile converter and marketer of upholstery fabrics. PFC performs its marketing through the trade name Magnolia Home Fashions.

### Prior Proceedings

Kaufmann commenced this lawsuit on November 2, 2001. PFC filed its first answer and counterclaim on January 16, 2001, and a second counterclaim on March 19, 2002. Those counterclaims were dismissed in part on April 15, 2002, with leave to amend. PFC has since revised its counterclaims, and Kaufmann moved to dismiss them on September 9, 2002. That motion was considered fully submitted on September 25, 2002.

### Facts

The following facts are taken from PFC's amended counterclaim and documents referred to therein.

PFC manufactures and sells an upholstery fabric called Sheridan (the "Sheridan design"). Kaufmann manufactures and sells an upholstery fabric called Queensland (the "Queensland design"). The underlying lawsuit filed by Kaufmann alleges that the Sheridan design infringes on the Queensland design.

On April 4, 2001, Kaufmann, through its legal counsel, wrote a letter to defendant Americraft Fabrics, Inc. ("Americraft"), alleging that PFC's Sheridan design "mimics and copies" Kaufmann's Queensland design. Americraft forwarded the letter to PFC.

On April 10, 2001, PFC responded to the letter. It stated that it was the appropriate addressee of the April 4, 2001 letter, and pointed out to Kaufmann various distinguishing differences between the two designs. Kaufmann did not respond to PFC's April 10, 2001 letter.

Without notice to PFC, Kaufmann next wrote letters to two companies that are stream of commerce customers for upholstery fabrics printed with PFC's Sheridan design: Rooms–To–Go, in Seffner, Florida, on September 13, 2001; and to Rhodes, Inc. in Atlanta, Georgia, on October 17, 2001. These companies buy furniture manufactured, respectively, by Corinthian Inc. ("Corinthian") and Albany Industries, Inc. ("Albany"), two direct customers of PFC to whom PFC had supplied the Sheridan design. The letters included a copy of Kaufmann's Queensland design copyright and stated that the Sheridan design "mimics and copies P. Kaufmann's Queensland design" and "clearly appears to have been copied to make a fabric under the name Sheridan that is incorporated in your furniture." The letters also demanded that the companies immediately stop selling any furniture incorporating the Sheridan design and threatened legal proceedings, an injunction, and a destruction of goods on hand.

After receiving the letter, Rooms–To–Go immediately terminated its existing contract for fabrics bearing the Sheridan design and cut off its ongoing business with PFC and use of the Sheridan design in furniture. At that point, Corinthian had been invoiced $50,979.38 in billings for the period of June 2001 to September 2001 for the supply of fabrics bearing the Sheridan design.

Rhodes immediately terminated its existing contract for fabrics bearing the Sheridan design and cut off its ongoing business with PFC and use of the Sheridan design in furniture. At the time of termination, Albany had been invoiced $144,302.20 in billings for the period of October 2000 to October 2001 for the supply of fabrics bearing the Sheridan design.

In the absence of these letters, PFC believes its contracts to supply upholstery fabric for Corinthian and Albany to use for furniture for Rooms–To–Go and Rhodes would have continued at least two years, if not indefinitely.

On October 26, 2001, Kaufmann, through counsel, alleged in a letter to PFC's counsel and to Americraft that the Sheridan design "mimics, copies and infringes" the Queensland design. It named Rooms–To–Go and Rhodes as well as PFC's direct customer, furniture manufacturer "New Albany," i.e., Albany Industries, Inc.

Kaufmann commenced this action on November 2, 2001, asserting causes of action for copyright infringement of the Queensland pattern and related claims of injury to business reputation and unfair competition. PFC's latest amended answer and counterclaims generally deny the claims and assert counterclaims for (1) tortious interference with contracts; (2) tortious interference with economic relations; and (3) deceptive trade practices.

For Counts I and II, PFC alleges that prior to September 2001 it had valid and ongoing contracts with Albany and Corinthian for the manufacture and supply of upholstery fabrics bearing PFC's Sheridan design, and that Kaufmann had knowledge of the existence of the contracts. These contracts were contingent on the acceptance by Rhodes and Rooms–To–Go of furniture manufactured, respectively, by Albany and Corinthian using fabrics bearing PFC's Sheridan design and supplied by Albany and Corinthian to Rhodes and Rooms–To–Go. Kaufmann, acting improperly and without privilege, intentionally interfered with performance of those contracts without justification by inducing Albany and Corinthian to terminate their existing contracts for fabrics bearing PFC's Sheridan design, cut off their ongoing business with PFC and terminate their use of the Sheridan design in furniture.

PFC claims that those contracts would have continued for at least two years, if not indefinitely, had Kaufmann not acted as it did. Further, it claims that these actions were motivated solely by an intent to profit at the expense of PFC, a much smaller competitor, and thus were motivated by actionable malice.

With regard to Count III, deceptive trade practices, PFC further alleges that Kaufmann's actions, silences and practices were misleading in material respects. As a proximate result, PFC has been injured and damaged in that Albany and Corinthian were caused to terminate their contracts with PFC immediately. Further, in the absence of those actions, the contracts would have continued for at least two years, if not indefinitely.

## DISCUSSION

### I. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir.1993)). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Eureopeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 122 (S.D.N.Y.1988). Complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996).

Review must be limited to the complaint and documents attached or incorporated by reference thereto. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). In this context, the Second Circuit has held that a complaint is deemed to "include ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000).

### II. Tortious Interference with Contract

 Under New York law, a claim for tortious interference with contract requires (1) the existence of a valid contract between the aggrieved party and a third party; (2) the alleged tortfeasor's knowledge of the contract; (3) the alleged tortfeasor's improper intentional interference with its performance without justification; and (4) damages. *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956); *Snyder v. Sony Music Entertainment*, 252 A.D.2d 294, 299, 684 N.Y.S.2d 235, 238–39 (1st Dep't 1999); *Enercomp, Inc. v. McCorhill Pub. Inc.*, 873 F.2d 536, 541 (2d Cir.1989). Improper intentional interference is generally evidenced by a tortfeasor inducing or otherwise causing a third person not to perform his contractual obligations to the aggrieved party. *Enercomp*, 873 F.2d at 541 (citations omitted).

In the April 12, 2002 opinion, this counterclaim was dismissed because PFC failed to allege (1) intentional interference without justification and (2) that Kaufmann interfered with PFC's contracts with Albany and Corinthian. *P. Kaufmann v. Americraft Fabrics, Inc.*, 198 F.Supp.2d 466, 472 (S.D.N.Y.2002). Kaufmann now argues that PFC has failed (1) to identify the existence of a valid contract between it and a third party; (2) to allege that Kaufmann

had knowledge of such contracts; (3) to allege that Kaufmann was motivated by improper intent; and (4) to allege that PFC incurred damages as a result. Kaufmann also argues that it has an economic justification for its actions—namely protecting its copyright—and that PFC's claim therefore fails as a matter of law.

■ Seeking to protect a copyright by alerting a third party that the copyright is being infringed constitutes a · justification defense to this claim. *Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.*, 764 F.2d 69, 75 (2d Cir.1985) (rejecting argument that notification of customers of alleged infringement and potential legal consequences for selling infringing products was unlawful interference with business because "[plaintiff's] actions were not. improper, since if in fact Shapiro has a valid copyright in the ... design, as may prove to be the case, sellers of infringing works may indeed be subject to certain sanctions."); *see also Arista Records, Inc. v. Mp3Board, Inc.*, 2002 WL 1997918, at *16 (S.D.N.Y. Aug.29, 2002).

As a result, because Kaufmann's actions were justified, the counterclaim must be dismissed.

### III. *Tortious Interference with Economic Relations* [1]

■ A complaint alleging tortious interference with economic relations must allege (1) a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of such relationship, (3) intent to interfere, (4) the defen-

dant acted with the sole purpose of harming the plaintiff or, failing that level of malice, uses dishonest, unfair or improper means, and (5) the relationship is injured. *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir.1997); *see also Impact Shipping, Inc. v. City of New York*, 1997 WL 297039, at *10 (S.D.N.Y. June 3, 1997).

On the original motion to dismiss, this counterclaim failed for the same reasons discussed above: failing to allege the requisite intent and for failing to allege an interference with its relationship with Albany and Corinthian. *P. Kaufmann*, 198 F.Supp.2d at 473. Kaufmann now alleges that PFC has failed to allege: (1) the existence of a business relationship; (2) that Kaufmann interfered with those relations; (3) that Kaufmann used improper means to do so; and (4) that PFC suffered damages as a result of the alleged interference.

As discussed above, Kaufmann's actions in notifying the stream-of-commerce customers of the potential infringement were justified. This counterclaim also must be dismissed.

### IV. *Deceptive Trade Practices*

■ The elements of a claim for deceptive trade practices under § 34 of New York's General Business Law are that (1) the alleged practice was misleading in a material respect; and (2) the claimant was injured. *Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294, 1306 (E.D.N.Y. 1997). Further, the claim must charge conduct of the defendant that is "consumer-oriented." *E.g., Gaidon v. Guardian*

---

1. PFC has named its second counterclaim "tortious interference with economic relations." Kaufmann suggests that the cause of action is typically referred to as "tortious interference with prospective economic advantage." The specific title of this tort is irrelevant. In *PPX Enterprises v. Audiofidelity Enterprises*, 818 F.2d 266, 269 (2d Cir.1987)

the Court noted that whether the plaintiff is alleging "tortious interference with: prospective economic advantage, beneficial business relations, prospective business advantage, and business of economic relations ... the elements necessary to establish such a claim remain constant."

*Life Ins. Co. of America*, 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999); *Wall Street Transcript Corp. v. Cohn*, 243 A.D.2d 341, 663 N.Y.S.2d 170, 171 (1st Dep't 1997). This requires a demonstration that the acts or practices "have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). A claim may be maintained by business entities as well as by consumers. *Barroso v. Polymer Research Corp. of America*, 80 F.Supp.2d 39, 43 (E.D.N.Y. 1999).

The third counterclaim focuses entirely on the purportedly misleading actions taken by Kaufmann with respect to PFC, Albany and Corinthian. There are no allegations as to how these behaviors affected a wide range of consumers—whether other similarly situated businesses or the public at large.

In arguing in opposition to the motion, PFC states that the public at large was affected because Kaufmann improperly drove up the manufacturing cost of furniture items and compelled consumers to spend more money for such furniture. There are no allegations about any deceptions practiced on the public at large, however. The misleading actions are all targeted toward businesses. Therefore, any widespread detriment would have to occur to the particular consumers who were misled—businesses that contract with companies for fabric. *E.g., Barroso*, 80 F.Supp.2d at 43. The counterclaim makes no such allegations and therefore fails to allege that the actions complained of were the sort of "consumer-driven" actions that § 349 was established to thwart.

Therefore, the motion to dismiss the third counterclaim is granted.

### V. Leave to Replead

Fed.R.Civ.P. 15(a) requires that "leave [to amend] shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). When a motion to dismiss is granted, "the usual practice is to grant leave to amend the complaint." 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed.1989); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) (same rule for complaints dismissed under Rule 9(b)). Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground. *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

Because this is PFC's first attempt at stating a valid counterclaim for deceptive business practices, *P. Kaufmann*, 198 F.Supp.2d at 473–74, leave is granted to address the deficiency discussed above.

PFC has tried and failed on two occasions to plead its tortious interference claims. It is unclear how it may successfully do so in light of the above ruling. As a result, justice does not require that it be given leave to replead these counterclaims.

### Conclusion

For the foregoing reasons, Kaufmann's motion to dismiss PFC's counterclaims is granted. PFC is granted leave to replead only the third counterclaim regarding deceptive business practices.

It is so ordered.