294

[684 NYS2d 235]

CRAIG SNYDER, Respondent-Appellant, v SONY MUSIC ENTER-
TAINMENT, INC., et al., Appellants-Respondents.

First Department, January 28, 1999

**APPEARANCES OF COUNSEL**

*Sonya J. Brouner* for respondent-appellant.

*Martin Glenn* of counsel (*Claudia Ray* on the brief; *O'Melveny & Myers, L. L. P.,* attorneys), for appellants-respondents.

## OPINION OF THE COURT

MAZZARELLI, J.

The first issue presented on appeal is whether the defendants are entitled to summary judgment dismissing plaintiff's causes of action for slander and slander per se where each of the three persons present during the alleged slander denies that the slanderous statements were made. The second issue is whether plaintiff's causes of action for tortious interference with contractual relations and prospective economic advantage should be dismissed where the plaintiff attorney had an at-will employment agreement with his law firm, and he resigned from the firm after defendants told his employers that he was representing litigants without the employers' knowledge. As we conclude that defendants have demonstrated entitlement to judgment as a matter of law on each of plaintiff's four causes of action, we reverse the IAS Court's order and grant defendants' motion for summary judgment dismissing the complaint.

In April 1997, plaintiff Craig Snyder was employed full time as an associate attorney at the law firm Carter, Ledyard and Milburn (Carter Ledyard). Contemporaneously, and acting as "of counsel" to the New Jersey law firm Wheeler & Lawson, Snyder represented one Mauricette Martin in an employment discrimination suit against defendant Sony Music. This representation of Martin, outside of Carter Ledyard's practice, was a violation of the firm's written policy, and constituted his second infraction of that policy. Wheeler & Lawson had no New York office, yet in several pleadings signed by Snyder in the Martin discrimination suit, Snyder listed his home address in Manhattan as the address of plaintiff's counsel.

On April 14, 1997, a settlement conference in the discrimination suit was held. It was attended by Snyder, attorney Wheeler and a law clerk from Wheeler & Lawson on behalf of Martin. Defendant Gail Edwin and attorney Steven Kessler represented Sony Music. By all accounts, the conference did not go well. Snyder terminated the discussions and he and his colleagues began to depart. As they left, Edwin expressed some confusion about the address in the pleadings, stating "What is the address, is that your home address, is this your home office?" Snyder replied, "The address is in the pleadings, read the pleadings." Edwin then asked, "Does [Carter Ledyard] know about your little side practice? Maybe I should call them." Snyder stated "Go ahead" to which Edwin responded "I will."

Later, Edwin called Carter Ledyard and spoke to James Rayhill, a partner and chairman of the firm's litigation department. Kessler was present when Edwin spoke with Rayhill. She told Rayhill that Snyder had filed papers in a discrimination action as of counsel to Wheeler & Lawson, listing a Manhattan residential address for plaintiff's counsel. Rayhill responded that Snyder was a full-time associate at Carter Ledyard, that the Manhattan address was Snyder's residence, and that based on Edwin's comments he was concerned that Snyder was practicing law outside the firm without its knowledge. Edwin then told Rayhill that Snyder seemed angry at the conference, and asked whether she "should be fearful that Snyder might in some way take his anger out on me." Rayhill responded that she should not be concerned.

The next day, Rayhill called Snyder into his office and, in the presence of William Sloane, another partner, told Snyder that he was aware of his involvement in the discrimination suit against Sony Music. Rayhill warned Snyder not to have any further contact with Edwin, Sony or Sony's outside counsel, and "not to make threats of any kind." Within a week, Snyder resigned from Carter Ledyard. This was before the firm's executive committee had determined whether or not to dismiss him.

Snyder commenced the instant action against Edwin and Sony Music. The amended complaint, filed on July 28, 1997, alleged four causes of action: slander, slander per se, tortious interference with contract and interference with prospective economic advantage. In support of the first two causes of action, Snyder alleged that Edwin, acting as agent for Sony Music, made the following slanderous statement to Rayhill: "Snyder threatened Edwin and made her fearful of her physical safety." As to the third and fourth causes of action, Snyder alleged that Edwin and Sony Music "intentionally and maliciously" interfered with his at-will employment agreement with Carter Ledyard, and did so for the sole purpose of harming Snyder's future employment status there.

In August 1997, defendants moved for summary judgment asserting that the slander never occurred. In support of the motion, defendants submitted affidavits from Edwin, Rayhill and Kessler, the only three persons who could have heard the alleged slanderous utterance. Each affiant stated in unequivocal terms that Edwin never said nor implied that Snyder had threatened her. In opposition, Snyder submitted his own affidavit that related hearsay statements from Sloane, and an-

other unnamed Carter Ledyard employee, to the effect that Rayhill had stated or implied that Edwin had accused Snyder of threatening her. Snyder's counsel also submitted an affidavit, in which he affirmed that the unnamed Carter Ledyard employee, who allegedly heard Rayhill's comments, would not submit an affidavit because she feared she would lose her job.

The IAS Court denied defendants' motion in its entirety. It found that "facts essential to justify opposition to this motion may exist but cannot be stated at this time as they are within the exclusive knowledge of Gail Edwin and Sony (see CPLR 3212 (f))." The court further ruled that Snyder was entitled to pretrial discovery before any summary disposition was appropriate.

■ On appeal, defendants argue that their motion for summary judgment should have been granted because they demonstrated, as a matter of law, that the alleged slander never occurred. We agree. A cause of action for slander requires publication of the defamatory matter, which occurs when it is heard by some third party (*Barber v Daly*, 185 AD2d 567, 568). By submission of affidavits from the only three persons present during the conversation, in which each unequivocally denies that the slanderous statement was made, defendants made a prima facie showing of no publication (*see, Barber v Daly, supra,* at 569; *Memory Gardens v D'Amico*, 91 AD2d 1159; *Indig v Finkelstein*, 29 AD2d 851, *affd* 23 NY2d 728; *Green v Irwin*, 28 AD2d 971). Snyder was therefore bound to come forward with proof in evidentiary form to show that a bona fide, triable issue of fact existed as to whether the slanderous statement was actually made and published (*Indig v Finkelstein, supra; Green v Irwin, supra; see also, Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067-1068; CPLR 3212 [b]). Snyder has failed to do so.

When challenged on a motion for summary judgment, a plaintiff may not rely solely on hearsay or conclusory allegations that the slanderous statement was made (*see, Schwartz v Society of N. Y. Hosp.*, 232 AD2d 212, 213; *Barber v Daly, supra; Green v Irwin, supra*). Here, Snyder's opposition consists solely of such allegations. For example, Snyder claims that Rayhill told Sloane that Edwin had accused Snyder of threatening her. However, Rayhill and Sloane deny that Rayhill ever made such statement. Additionally, Snyder asserts that an "unnamed" Carter Ledyard employee heard Rayhill state, in purported reference to Snyder, that "threats are a criminal matter." It is not alleged that the unnamed employee has any

knowledge of the actual words uttered. Thus, the hearsay evidence offered by Snyder to defeat defendants' motion is either directly refuted by an individual present during the alleged slander, or relates to a listener's after-the-fact characterization of the slander, rather than the slanderous utterance itself. As such, Snyder's evidence is insufficient to defeat defendants' prima facie showing of no publication (*see, Schwartz v Society of N. Y. Hosp.*, *supra*; *Barber v Daly*, *supra*; *but see, Egleston v Kalamarides*, 58 NY2d 682, *modfg* 89 AD2d 777).

Further, since all those present during the alleged slander unequivocally deny that Edwin made the slanderous statement, no showing has been made that discovery will yield any evidence demonstrating publication (*see, Green v Irwin*, *supra*; *Indig v Finkelstein*, *supra*). Thus, defendants are entitled to summary judgment dismissing the first and second causes of action.

■ Snyder's third and fourth causes of action should also be dismissed. "A claim of tortious interference with contract requires: (1) the existence of a valid contract between plaintiff and a third party, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of a breach of the contract without justification, (4) actual breach of the contract, and (5) resulting damages. (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 424, *affg* 215 AD2d 314.)" (*American Preferred Prescription v Health Mgt.*, 252 AD2d 414, 417.) In the third cause of action, Snyder alleges that defendants interfered with his "employee-at-will" agreement with Carter Ledyard. However, the case law is clear that "[a]greements that are terminable at will are classified as only prospective contractual relations, and thus cannot support a claim for tortious interference with existing contracts (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191-192)." (*American Preferred Prescription v Health Mgt.*, *supra*, at 417.)

Additionally, there is no evidence that Carter Ledyard breached the at-will agreement with Snyder (*see, NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 620-621). If any breach occurred, it was by Snyder himself for his second violation of the firm's written prohibition against outside law practice. Accordingly, the third cause of action should be dismissed.

■ The cause of action for tortious interference with prospective economic advantage also fails. To establish such a claim, a plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by

"wrongful means" or that defendant acted for the sole purpose of harming the plaintiff (*see, Glen Cove Assocs. v North Shore Univ. Hosp.*, 240 AD2d 701, 702, *lv denied* 91 NY2d 801; *NBT Bancorp v Fleet/Norstar Fin. Group*, 215 AD2d 990, *affd* 87 NY2d 614, *supra*). "Wrongful means" includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure, but more than simple persuasion is required (*Guard-Life Corp. v Parker Hardware Mfg. Corp.*, *supra*, at 191).

The only evidence of wrongful means offered by the plaintiff is the alleged slanderous statement by Edwin. However, we have already concluded that defendants have established as a matter of law that no slander occurred. As Snyder has failed to submit evidence of some other tortious conduct by defendants, the wrongful means requirement has not been met (*see, Vogt v Witmeyer*, 87 NY2d 998, 999).

Nor does Snyder's evidence raise a triable issue of fact as to whether Edwin's phone call to Carter Ledyard was motivated *solely* by a desire to harm him. Given the highly unusual circumstances where counsel for the plaintiff in a discrimination suit was acting of counsel to a New Jersey law firm, gave a New York residential address in the pleadings, and was simultaneously employed as a full-time associate at a New York law firm not involved in the suit, serious questions were raised concerning Snyder's representation of Martin in the discrimination suit. As defendants have submitted evidence in affidavit form, providing legitimate, nontortious reasons for Edwin's call to Carter Ledyard concerning the nature of Snyder's representation of Martin, no triable issue of fact exists as to whether defendants' sole motivation was to harm Snyder (*see, Glen Cove Assocs. v North Shore Univ. Hosp.*, *supra*; *Matter of Pamilla v Hospital for Special Surgery*, 223 AD2d 508).

Furthermore, the record shows that Snyder's employment relationship with Carter Ledyard was placed in jeopardy by his multiple violations of the firm's policy prohibiting outside employment, rather than any interference on the part of defendants (*see, Jabbour v Albany Med. Ctr.*, 237 AD2d 787, 790 [plaintiff must establish that wrongful acts were proximate cause of interference with plaintiff's prospective contractual relations]). Thus, it cannot be said that "but for" defendants' interference, Snyder's employment relationship with Carter Ledyard would have continued (*see, American Preferred Prescription v Health Mgt.*, *supra*; *Bankers Trust Co. v Bernstein*, 169 AD2d 400, 401).

Snyder cross-appealed on the ground that the IAS Court did not grant him summary judgment on his third and fourth causes of action, although he did not move for such relief before the IAS Court. In light of our determination that the complaint should be dismissed, the cross appeal is academic.

Accordingly, the order of the Supreme Court, New York County (Stuart Cohen, J.), entered January 7, 1998, which denied defendants' motion for summary judgment, should be reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint. Plaintiff's cross appeal should be dismissed as academic.

Motion to strike plaintiff's reply brief denied.

ELLERIN, J. P., WILLIAMS and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered January 7, 1998, reversed, on the law, without costs, defendants' motion for summary judgment granted and the complaint dismissed; plaintiff's cross appeal dismissed as academic. Motion to strike plaintiff's reply brief denied.