**Constance J. ROEDER, Plaintiff,**

v.

**Joseph W. ROGERS, et al., Defendants.**

**No. 01–CV–6516L.**

United States District Court,
W.D. New York.

May 22, 2002.

Edward P. Hourihan, Jr., Harris Beach, LLP, Pittsford, NY, for Plaintiff.

Suzanne E. Ouellette, Jaeckle, Flieschmann & Mugel, LLP, Rochester, NY, for Joseph Rogers and Margaret A. Rogers.

Richard A. Palumbo, Boylan, Brown, Code, Fowler, Vigdor & Wilson, LLP, Rochester, NY, for Mark Malcolm, II.

William H. Helferich, III, Harter, Secrest & Emery, LLP, Rochester, NY, for Lopinto, Schlather, Solomon & Salk, Raymond M. Schlather and Daniel L. Hoffman.

### DECISION AND ORDER

LARIMER, Chief Judge.

This diversity action has its genesis in a property dispute that is currently the subject of a civil action in Yates Supreme Court, New York ("state court action"). The state court action involves disputes concerning two contiguous pieces of land located on Keuka Lake in Yates County, New York.

. Plaintiff's two-count federal complaint alleges state-law claims of tortious interference with prospective business relations and abuse of civil process. Plaintiff, Constance J. Roeder ("Roeder"), and defendants, Joseph and Margaret Rogers ("the Rogers defendants"); the law firm of Lo-Pinto, Schlather, Solomon & Salk; Raymond Schlather; and Daniel Hoffman (collectively "the LoPinto defendants"), are all involved in the state court action. Plaintiff and the Rogers are litigants, while the LoPinto defendants acted as counsel for the Rogers. Currently pending before this Court are the Rogers defendants' motion to dismiss under abstention principles or for summary judgment[1], and the Lo-Pinto defendants' motions for summary judgment and sanctions pursuant to Fed. R.Civ.P. 11. Plaintiff opposes the motions and cross-moves pursuant to Fed.R.Civ.P. 56(f) for further discovery.

## I. BACKGROUND

In 1993, the Rogers commenced the state court action—a trespass and quiet-title action—against Roeder's husband, John Nicolo ("Nicolo"), and Nicolo's corporation, South Slope Holding Corporation, who were former owners of the property during some of the relevant periods. Roeder was later added as a defendant when the property was conveyed to her.[2] The property involved abuts property owned by the Rogers on Keuka Lake and the dispute revolves in part around a large boathouse constructed by Nicolo in 1991. The Rogers contend that the boathouse interferes with their littoral and riparian property rights. In addition, both the Rogers and plaintiff are claiming ownership of the same portion of the foreshore near their adjoining property lines. *See* Docket No. 13, Ex. 4, p. 2, 7.

The LoPinto defendants began representing the Rogers in the state court action in February of 2000, many years after the action was filed. In an apparent attempt to bolster the Rogers's claims, the LoPinto defendants negotiated two quitclaim deeds, executed in September and

---

1. The Rogers defendants' motion is styled as a motion to dismiss. The LoPinto defendants' motion is also styled as a motion to dismiss, or alternatively for summary judgment. All of the parties, including plaintiff, rely heavily on matters outside the pleadings. For this reason, the Court informed the parties during oral argument that these motions would be treated as motions for summary judgment. *See* Fed.R.Civ.P. 12(b).

2. Nicolo acquired this property in 1969. In 1992, the property was conveyed to South Slope Holding Corporation, of which Nicolo is the sole shareholder. *See* Docket No. 13, Ex. 4, p. 2. South Slope conveyed much of this property to plaintiff in 1996. The disputed area was conveyed by South Slope to plaintiff in 2000. *See Id.* at p. 3.

November 2000, from the remaining heirs of Helen Bentley Westlake ("Westlake"), a previous owner of the Rogers's property. Westlake had conveyed the property to the Rogers's predecessor in title, Charles Eckel.

In the state court action, Roeder claims that the transfer from Westlake to Charles Eckel did not include any area beyond the high water mark of the property. Such an omission is arguably important, because a portion of the property in dispute in the state court action is between the high and low water marks of the two properties. The quitclaim deeds conveyed the grantors' interests, to the extent that any interests remained, to the Rogers. In this federal action, Roeder claims that the negotiation for and recording of the two quitclaim deeds was an abuse of civil process and constituted tortious interference with prospective business relations that Roeder had with Todd Tickner ("Tickner"), a potential purchaser of Roeder's property.

On November 24, 2000, Roeder sold a portion of her property—property that is not the subject of the state court action—to Tickner. There is no dispute that Tickner was aware of the pending state court action. Negotiations between Roeder and Tickner continued, with the parties discussing transferring the remaining property subject to an agreement that Roeder would indemnify Tickner from liability in the state court action.

On August 24, 2001, the LoPinto defendants prepared and recorded a notice of pendency (or *lis pendens*) against Roeder's property, with reference to the state court action. After learning of the notice, Tickner chose not to purchase the remaining property, even with the inclusion of an indemnification agreement. Plaintiff

claims that the notice of pendency tortiously interfered with her prospective contractual relationship with Tickner and constituted an abuse of civil process. Plaintiff has never taken any steps to vacate or challenge the notice of pendency in state court.

## II. DISCUSSION

A motion for summary judgment shall be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the moving party's burden to demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the moving party has carried its burden," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (emphasis in original) (quoting Fed.R.Civ.P. 56(e)).

Based on these well established principles, it is clear that summary judgment in favor of defendants is appropriate and that the complaint must be dismissed in all respects.

### A. Tortious Interference

Plaintiff alleges in her complaint that the defendants interfered with the sale of the remaining parcel of land by "falsely stating that plaintiff does not own the Premises, fraudulently obtaining and illegally filing [sic] quit-claim deed,[3] [and] im-

**3.** Although the complaint references only one quitclaim deed executed by Suzanne Sprung

Westlake on November 10, 2000, plaintiff, in her papers, references a second deed signed

properly filing a notice of lis pendens . . . ." Complaint, ¶ 28.[4] In support of her claim, plaintiff offers an affidavit signed by Tickner outlining his reasons for declining plaintiff's offer of sale. In his affidavit, Tickner makes no reference to the quitclaim deeds or to any allegations attributed to defendants that plaintiff did not own the premises. Instead, Tickner claims that when notified of the notice of pendency, through an August 27, 2001 letter addressed to his attorney, he elected not to purchase the property, even with an indemnification agreement. Tickner Aff., ¶ 13. Since, according to Tickner, the notice of pendency was the sole factor leading to his decision, there is no evidence to support plaintiff's claims that statements allegedly made by the defendants concerning the ownership of Roeder's property or the quitclaim deeds somehow caused Tickner to refuse to purchase the property. Therefore, the Court will address only the remaining contention—that is, whether the filing of the notice of pendency constituted tortious interference with prospective contractual relations.

■ To state a prima facie case for tortious interference with a prospective contract under New York law, plaintiff must show: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." *Astor Holdings, Inc. v. Roski*, 2002 WL 72936, at *19 (S.D.N.Y. Jan.17, 2002).

Essentially, in order to establish a claim for tortious interference, "plaintiff must demonstrate that the defendant[s'] interference with [her] prospective business relations was accomplished by 'wrongful means' or that defendant acted for the sole purpose of harming the plaintiff. 'Wrongful means' includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure, but more than simple persuasion is required." *Snyder v. Sony Music Entertainment, Inc.*, 252 A.D.2d 294, 684 N.Y.S.2d 235, 239 (1st Dep't 1999) (citations omitted); *see also Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 (2d Cir. 1998).

Thus, the Court must determine, drawing all inferences in favor of plaintiff, if the notice of pendency can constitute wrongful means or could demonstrate that defendants acted for the sole purpose of harming plaintiff. Crucial to this inquiry is whether the notice was, in fact, improperly filed.

A properly filed notice of pendency "puts the world on notice of the plaintiff's potential rights in the action and thereby

---

by Judith Manning on September 5, 2000. Judith Manning was married to the now deceased grandson of Helen Bently Westlake.

4. Plaintiff also claims that defendants interfered with her prospective contractual relationship with Tickner by "attempting to arrange a sale of the Premises at below market value to Rogers without consent or knowledge of plaintiff." Complaint, ¶ 29. This allegation apparently relates to an August 27, 2001 letter sent to Tickner by the LoPinto defendants, essentially proposing a resolution of the property dispute. *See* Tickner Aff., Ex. B.

In the letter, the Rogers offered to purchase from Tickner the boathouse and the lake frontage associated with it at an "agreeable price." In return, the Rogers would discontinue the state court action. Obviously, Tickner did not and could not accept this offer, since he declined to purchase the subject property from Roeder. Moreover, the record does not indicate that Ticker ever seriously considered the offer since he was never in a position to act on it. It is, therefore, impossible to see how this offer interfered in any way with the relationship between Roeder and Tickner.

warns all comers that if they then buy the realty or lend on the strength of it or otherwise rely on the defendant's right, they do so subject to whatever the action may establish as the plaintiff's right." *In the Matter of Sakow*, 97 N.Y.2d 436, 741 N.Y.S.2d 175, 767 N.E.2d 666, 669 (2002) (quotations omitted). Because a notice of pendency can affect the alienability of property, this device, by statute, has a narrow application. *5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 315–316, 486 N.Y.S.2d 877, 476 N.E.2d 276 (1984). Specifically, "a notice of pendency may be filed in any action ... in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property...." N.Y.C.P.L.R. § 6501.[5] Although not utilized at all in this case by Roeder, the statute does provide a procedure to challenge the filing of a notice of pendency and to obtain its cancellation. The notice of pendency may be challenged pursuant to N.Y.C.P.L.R. § 6514.[6] A court's review of the notice is limited, but "[i]f the procedures prescribed in article 65 have not been followed or if the action has not been commenced or prosecuted in good

faith, the notice must be canceled in the first instance, and it may be in the second." *5303 Realty Corp.*, 64 N.Y.2d at 320, 486 N.Y.S.2d 877, 476 N.E.2d 276.

Here plaintiff does not dispute the procedures by which the notice was filed. Instead, plaintiff argues that the state court action only seeks the removal of the boathouse, suggesting that the underlying dispute would not "affect the title to, or the possession, use or enjoyment of, real property," N.Y.C.P.L.R. § 6501. Such a contention is frivolous. The proceedings in the state court action clearly involve a dispute that affects not only title to a portion of the property but also the use or enjoyment of the premises in question. The state court judge handling the proceedings, Justice Dennis Bender, described the Rogers's complaint as alleging not only an interference with their littoral rights, but also as seeking "a declaration that they own the 'parcel 4' foreshore, under alternative theories of ownership by title, adverse possession and/or prescriptive easement." Docket No. 13, Ex. 4, p. 2. Thus, the state court action involves more than just the removal of the boat-

---

**5.** Section 6501 provides in full:

A notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property, except in a summary proceeding brought to recover the possession of real property. The pendency of such an action is constructive notice, from the time of filing of the notice only, to a purchaser from, or incumbrancer against, any defendant named in a notice of pendency indexed in a block index against a block in which property affected is situated or any defendant against whose name a notice of pendency is indexed. A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as a party.

**6.** Section 6514 provides in part:

(a) Mandatory cancellation. The court, upon motion of any person aggrieved and upon such notice as it may require, shall direct any county clerk to cancel a notice of pendency, if service of a summons has not been completed within the time limited by section 6512; or if the action has been settled, discontinued or abated; or if the time to appeal from a final judgment against the plaintiff has expired; or if enforcement of a final judgment against the plaintiff has not been stayed pursuant to section 5519.

(b) Discretionary cancellation. The court, upon motion of any person aggrieved and upon such notice as it may require, may direct any county clerk to cancel a notice of pendency, if the plaintiff has not commenced or prosecuted the action in good faith.

house. The Rogers also seek to establish title to a portion of real property.

■ I conclude that the properly filed notice of pendency did not constitute "wrongful" conduct which would subject defendants to liability for tortious interference. It is clear to this Court that the state court action falls within the scope of disputes delineated in section 6501, and, thus, the notice of pendency was properly filed. Not only was the filing appropriate, but I believe that a conscientious attorney representing a client in a hotly contested property dispute would be remiss if he or she failed to file a notice of pendency to protect the client's interest. The record clearly does not support Roeder's claim that the notice of pendency was filed for the *sole* purpose of harming her or her relationship with Tickner. There was a legitimate purpose in filing the notice of pendency because it provided notice to the world of the pending litigation and the fact that it may affect title to, and use and enjoyment of, the property described. Of course, the filing of the notice of pendency conveyed no new information to Tickner, who was well aware of the pending litigation and had discussed an indemnification agreement with Roeder to hold him harmless. Although Tickner claims that the filing of the notice caused him not to buy the premises (at least for now), it is hard to understand why that would be so.

A notice pendency hardly falls within the typical definition of wrongful conduct warranting liability for tortious interference. *See Snyder*, 684 N.Y.S.2d at 239 (" 'Wrongful means' includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure ..."). Perhaps the filing of a notice of pendency could be deemed a "civil suit," but that is a stretch. In any event, in view of the facts here involving an obvious dispute over property

rights, the filing of the notice was proper. It is only when civil suits or other proceedings are "frivolous" that there might be a viable claim for tortious interference. *See Pagliaccio v. Holborn Corp.*, 289 A.D.2d 85, 734 N.Y.S.2d 148, 149 (1st Dep't 2001) ("civil suits and threats thereof constitute 'improper means' only if such tactics are frivolous") (citing Restatement [Second] of Torts §. 767).

It is significant that plaintiff's complaint does not address the procedural validity of the notice of pendency or allege that the filing of the underlying state court action was in anyway tortious. Instead, plaintiff challenges only the *breadth* of the notice. For example, plaintiff contends in her brief in opposition to defendants' motions that the notice was wrongful because it "purported to assert claims against plaintiff's property that are based upon a fictitious, self-serving property line that is not contained in either the Rogers or plaintiff's deeds." Plaintiff's Memorandum in Opposition, p. 4. Yet Tickner in his affidavit does not claim that the scope of the notice of pendency led him to decline to purchase the property. Tickner simply states:

The letter by Mr. Hoffman to my attorney Mr. Reynolds was the first time I became aware that the Rogers and/or their attorneys had tied up the property by filing a lis pendens. To my understanding, the process of filing a lis pendens publicly alerts all interested purchasers of the affected property that, if they buy the realty, they do so subject to the outcome of the legal action. Once I became aware of this fact ... I contacted Mr. Nicolo and advised him that I was no longer interested in consummating the purchase and sale agreement with Ms. Roeder even with an indemnification agreement regarding the Rogers/Roeder litigation. **Simply put, my desire to finalize the purchase and**

sale agreement with Ms. Roeder ended when the LoPinto law firm advised me, through my attorney, that a lis pendens had been filed against the property.

Tickner Aff., ¶¶ 12–13 (emphasis added).

There is no apparent connection between the breadth of the notice of pendency and Tickner's failure to purchase the remaining property. Moreover, the description in the notice of pendency mirrors the description of the "subject property" in the Fourth Amended Complaint. *Compare* Notice of Pendency, Docket No. 013, Ex. 5 *with* Fourth Amended Complaint, ¶ 11, Docket No. 13, Ex. 3. It is difficult to comprehend how the scope of the notice of pendency can give rise to a tortious interference action where the language in the notice simply tracks the complaint on which it was based—a complaint which plaintiff has not challenged as frivolous.

Finally, when the Court first reviewed the pleadings and pending motions in this federal case, I could not understand why plaintiff would commence a federal action for damages alleging only state causes of action but take no steps whatsoever to challenge the offending notice of pendency in the state court action. At oral argument on these motions, counsel for plaintiff failed completely to provide a satisfactory explanation. Despite plaintiff's claim that her "ability to sell her property has been compromised by defendants' actions, and prompt resolution is required," plaintiff elected not to pursue the most direct remedy and instead sought redress before a federal court which has no jurisdiction to vacate the challenged notice of pendency. Plaintiff's Memorandum in Opposition, p. 18.

## B. Abuse of Civil Process

### 1. The notice of pendency

Plaintiff alleges that the filing of the notice of pendency constituted an abuse of process because the notice was filed: 1) "in an attempt to induce her to sell a portion of her Premises at a below market value to defendants Rogers"; 2) for the sole purpose of "harassing plaintiff"; and 3) to prevent plaintiff from selling the property to Tickner. Complaint, ¶ 35. This cause of action is also frivolous.

■ A malicious abuse of process action can be maintained against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994)). Thus, the focus is on the misuse of the process, not on how the process was obtained. *See Ramirez v. Platt*, 1988 WL 127452, at *3 (E.D.N.Y. Nov.28, 1988) (citing *Alexander v. Unification Church of America*, 634 F.2d 673, 677–78 (2d Cir.1980)); RESTATEMENT (SECOND) OF TORTS § 682.

■ Although plaintiff claims that the notice was filed to "coerce" her into selling a portion of her property to the Rogers, plaintiff offers no evidence to support that claim. Obviously, plaintiff was not coerced since she has not sold the property to anyone. In light of this record, it does not appear that plaintiff or her husband, an experienced real estate broker and appraiser, could be "coerced" into doing anything relative to this property.

In any event, in plaintiff's own affidavit, she does not describe *any* coercive overtures initiated by defendants after the filing of the notice of pendency. Plaintiff's husband, John Nicolo, describes several "settlement proposals" whereby the Rogers offered to purchase varying areas of

lakefront property from the then owner, South Slope. Nicolo Aff., ¶ 11. Yet according to his affidavit, these offers occurred *before* the filing of the notice. Like plaintiff, Nicolo makes no mention of defendants' alleged attempts to force a below market value sale of the property.

Plaintiff's allegation that the notice was filed for the sole purpose of harassing her likewise cannot support her abuse of process claim. "[A] malicious motive, without more, does not give rise to [such] a cause of action." *Brown v. Bethlehem Terrace Assocs.*, 136 A.D.2d 222, 525 N.Y.S.2d 978, 980 (3rd Dep't 1988). Moreover, the notice merely restates the claim and property description set forth in the complaint, thus serving the legitimate purpose of protecting the Rogers's claim in the event that the property is transferred *pendente lite.* As such, defendants are using the notice for its proper purpose, even if "a more malevolent impulse may simultaneously be satisfied." *Raved v. Raved,* 105 A.D.2d 735, 481 N.Y.S.2d 170, 171–172 (2d Dep't 1984).

Finally, the interference with the sale of property is a lawful purpose of a notice of pendency. *Brown,* 525 N.Y.S.2d at 980; *Andesco v. Page,* 137 A.D.2d 349, 530 N.Y.S.2d 111, 115 (1st Dep't 1988). The very nature of a notice of pendency dictates that the filing of the notice:

> will .... hinder prospective buyers from purchasing property that might ultimately be subject to a judgment. This would result regardless of the underlying motivation for utilizing the process.

*Raved,* 481 N.Y.S.2d at 171. Thus, defendant here has used the notice of pendency consistent with its purpose, and no action for abuse of process can lie.

### 2. The Quitclaim Deeds

■ To the extent that plaintiff's complaint could be read to allege that the filing of the quitclaim deeds somehow constituted an abuse of process, this claim must also fail. First, plaintiff has offered no argument nor cited any case law which would suggest that a quitclaim deed can constitute regularly issued legal process. Moreover, plaintiff has not produced any evidence to support her argument that the deeds were filed for an improper purpose. Plaintiff's chief complaint seems to be that the deeds will be used to gain an advantage in the state court action. Such a result hardly justifies a separate tort action in federal court.

In any event, by their terms, the deeds affect plaintiff's property only to the extent that the grantors had an actual interest in that property. Plaintiff may disagree with the description of the metes and bounds articulated in the deeds, but it is specious to suggest, as plaintiff does, that these deeds somehow sought to "convey" portions of plaintiff's property. Such a contention misapprehends the nature of a quitclaim deed, since such a deed passes only the "right, title, and interest [that] the grantor has as the time of making the deed." 43A N.Y.Jur.2d Deeds § 228.

### C. Plaintiff's Motion Pursuant to Rule 56(f)

In opposing defendants' motions for summary judgment, plaintiff requests additional discovery pursuant to Fed.R.Civ.P. 56(f). A party seeking such additional discovery "must submit an affidavit explaining, among other things, 'what facts are sought and how they are to be obtained; ... what efforts the affiant has made to obtain those facts; and ... why those efforts were unsuccessful.'" *National Union Fire Ins. Co. v. Stroh Cos., Inc.,* 265 F.3d 97, 117 (2d Cir.2001) (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985)).

Here plaintiff alleges that additional discovery is necessary "to challenge, through deposition examination, the LoPinto defendants [sic] conclusory statement that their conduct was not wrongful or was done without malice." Hourihan Aff., Docket No. 35, ¶ 24. Yet a fishing expedition for evidence of "malice," even if successful, could not rescue plaintiff's claims. Regardless of any malevolent intent, the notice of pendency was properly filed. Even if defendants' actions were spurred in part by impure hearts, the legitimate purpose of filing the notice—to protect the Rogers's state law claims in the event of a conveyance—directs a finding that the notice of pendency did not constitute tortious interference.

Furthermore, additional discovery could not affect the Court's ruling on the abuse of process claim. Bad intent alone cannot support such an action. *Brown,* 525 N.Y.S.2d at 980. In addition, plaintiff has advanced no evidence of an attempt to misuse the notice of pendency or the quitclaim deeds in order to compel performance or forbearance of some act. Surely if defendants had used the notice or deeds to force a below market sale upon plaintiff either she or Nicolo would have some knowledge of the attempted coercion. Yet both plaintiff's and Nicolo's affidavits are silent on this topic.

Because there are no discoverable facts that reasonably could alter the Court's findings here, plaintiff's request is denied. *See Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 422 (2d Cir.1989).

### D. Rogers Defendants' Motion for Abstention

The Rogers defendants argue that the issues here can and should be resolved as part of the pending action in state court. Thus, they ask this Court to abstain from exercising its jurisdiction here. I deny the request, although it is academic and moot in view of this Court's decision, to dismiss the complaint.

I can certainly understand why defendants have made this request. There seems to be little reason to be in federal court. There are no federal claims advanced here, and the disputes revolve around an existing state court action. The New York State Court could certainly have handled all these disputes in one proceeding or in a series of proceedings. Nevertheless, the wisdom, efficiency and practicality of plaintiff's determination to initiate a new, federal lawsuit is not controlling on the issue of abstention.

■ Pursuant to the *Colorado River* doctrine, a "court may abstain in order to conserve federal judicial resources only in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" *Woodford v. Community Action Agency of Greene County, Inc.,* 239 F.3d 517, 522 (2d Cir. 2001) (citing *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). In considering the factors to be weighed by this Court in evaluating the applicability of this doctrine, I find that abstention is not appropriate here. *See id.* at 522 (listing factors).

First, although the state court action does involve a res over which the state court has assumed jurisdiction, this Court need not exercise jurisdiction over this property in order to resolve the dispute pending here. Second, this forum has been mutually convenient for all parties, and had the case proceeded to discovery, any problems with duplication could have been resolved through careful case management. Third, while this action and the

state court action share many facts in common, this Court's exercise of jurisdiction will not result in piecemeal litigation. Fourth, although the state court proceedings have been pending for some time, the claims raised by plaintiff here have not been addressed in that action. Finally, although none of plaintiff's claims here involve federal law, and the state procedures would have been adequate to protect plaintiff's rights, these factors alone do not require abstention. The Rogers' defendants motion for abstention is hereby denied.

### E. The LoPinto Defendants' Motion for Rule 11 Sanctions

The LoPinto defendants have asked this Court to impose sanctions pursuant to Fed.R.Civ.P. 11, arguing in part that plaintiff's complaint is not warranted by existing law or by any non-frivolous argument to extend the existing law. Given the utter lack of legal support for plaintiff's claims here, the LoPinto defendants' motion is granted.

■ Rule 11(b)(2) provides that an attorney presenting a pleading to the court:

is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Rule 11(b)(2) "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir.2000) (quoting Fed. R.Civ.P. 11 advisory committee note to 1993 amendments). Thus, an attorney's conduct triggers sanctions when it is objec-

tively unreasonable. *Id.* at 65. "Sanctions should only be imposed if 'it is patently clear that a claim has absolutely no chance of success,' and all doubts should be resolved in favor of the signing attorney." *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir.1995) (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir.1993)).

In opposing the LoPinto defendants' motion, plaintiff does not argue that the complaint can be justified by an argument to extend existing law. Instead, plaintiff argues that both the tortious interference action and the abuse of process action are warranted by current New York law. As discussed at length earlier in this decision, New York law provides no foundation for plaintiff's claims. More importantly, it is plainly clear that plaintiff's claims on their face stood no chance of success.

### 1. The Tortious Interference Claim

■ The facts alleged in the complaint and the evidence which existed at the time the complaint was filed simply cannot support a claim for tortious interference. Although plaintiff claims that the notice of pendency filed by defendants was overly broad, it is clear that this notice was properly filed. Even a cursory inspection of the Fourth Amended Complaint filed in the state court action reveals a dispute over the ownership of a portion of plaintiff's property. Moreover, the language in the notice tracks almost verbatim the description of the disputed property in that complaint. It is simply impossible for plaintiff to demonstrate that this notice constituted the wrongful means necessary to prosecute an action for tortious interference.

Moreover, the tortious interference alleged by plaintiff here—an interference with the sale of her property—is the natural result of a properly filed notice of

pendency. *Brown*, 525 N.Y.S.2d at 980; *Andesco*, 530 N.Y.S.2d at 115.

## 2. The Abuse of Process Claim

■ Similarly, the decision to proceed with the abuse of process claim was objectively unreasonable. Neither plaintiff nor Nicolo was able to articulate any attempt to use the notice of pendency for an improper purpose. Even if defendants filed the notice to satisfy some secondary "malevolent impulse," such an impulse, without more, cannot give rise to an abuse of process claim. *Brown*, 525 N.Y.S.2d at 980; *Raved*, 481 N.Y.S.2d at 171–172.

Significantly, in arguing that the notice somehow constituted an abuse of process, plaintiff essentially admits that a dispute concerning the Rogers and plaintiff's property line is set forth in the Fourth Amended Complaint:

The bad faith of the LoPinto Defendants in filing the lis pendens is highlighted by the fact that the three prior complaints only referred to the Rogers' deed as the basis for their claim of littoral water rights. Yet in the fourth amended compliant, the Rogers purport to claim ownership to the "Parcel 4 foreshore" based upon the above-noted fictional properly line.

Plaintiff's Memorandum in Opposition, Docket No. 23, p. 8. The fact that the first three complaints in the state court action apparently did not reference a disputed property line is irrelevant. The Fourth Amended Complaint, the complaint on which the notice of pendency was based, states, as plaintiff admits, a claim against plaintiff's property. Thus, plaintiff cannot demonstrate that the notice was diverted from its lawful purpose.

Plaintiff correctly suggests that the filing of a notice of pendency can, in certain circumstances, give rise to an abuse of process claim. However, *Felske v. Bern-* *stein*, 173 A.D.2d 677, 570 N.Y.S.2d 331 (2d Dep't 1991), the principal case on which plaintiff relies, merely illustrates that the notice must be diverted from its proper purpose in order to sustain such an action. In *Felske*, the court found that the underlying action, one for specific performance, would not affect the title to, possession, use or enjoyment of real property, thus a claim for abuse of process could be sustained. *Id.*, 570 N.Y.S.2d at 333. Unlike *Felske*, plaintiff here simply cannot demonstrate that the notice was so diverted.

In addition, plaintiff offers no authority to support the allegation that the quitclaim deeds could constitute an abuse of process. Although plaintiff claims that these deeds improperly "transferred" portions of plaintiff's property to the Rogers, such an argument distorts beyond recognition the true effect of a quitclaim deed—to transfer only the interest possessed by the grantor at the time of signing.

The issuance of sanctions is not a course undertaken lightly by this Court. In evaluating the arguments and evidence before me, I have given the signing attorney every benefit of the doubt here. Unfortunately, plaintiff's attorney has chosen to advance through the filling of the complaint in this action two claims that unquestionably had no chance of success. I find that the decision to file this complaint was objectively unreasonable, and, as such, I hereby sanction plaintiff's attorneys pursuant to Rule 11(b)(2).

The LoPinto defendants have requested sanctions in the amount of $8,800, the cost of legal services and expenses incurred by the LoPinto defendants in reviewing and defending against this complaint. Although plaintiff contests the appropriateness of sanctions in general, plaintiff has not disputed the reasonableness of these fees. I therefore award sanctions against plain-

tiff's attorneys in the amount of $8,800. I find this amount to be "sufficient to deter repetition of such conduct." Fed.R.Civ. Pro. 11(c)(2).

## III. CONCLUSION

For the foregoing reasons, the Rogers defendants'[7] motion for summary judgment (Docket No. 17) and the LoPinto defendants' motion for summary judgment (Docket No. 13) are hereby granted, and the complaint is dismissed. The Rogers defendants' motion for abstention is denied (Docket No. 17), as is plaintiff's cross motion for additional discovery (Docket No. 30) pursuant to Fed.R.Civ.P. 56(f). The LoPinto defendants' motion for Rule 11 sanctions (Docket No. 22) is granted and plaintiff's attorneys are directed to pay to defendants' attorneys the sum of $8,800 to reimburse them for defending against the action, within thirty days.

IT IS SO ORDERED.

7. While this matter was under advisement, the parties informed the Court of the death of Joseph Rogers. No formal suggestion of death has been filed, and the Court sees no need to delay a decision in this matter, especially since the claims are dismissed. If necessary, the parties can make any required substitutions under Fed.R.Civ.P. 25 in due course.