[899 NYS2d 167]

ROBERT E. STEINBERG, ESQ., Appellant, v STANLEY SCHNAPP,
ESQ., Respondent.

First Department, April 13, 2010

172

**APPEARANCES OF COUNSEL**

*Robert E. Steinberg*, New York City, appellant pro se.

*Avrom R. Vann, PC*, New York City (*Avrom R. Vann* of counsel), for respondent.

**OPINION OF THE COURT**

NARDELLI, J.

At issue is the propriety of the motion court's dismissal of an attorney's claims under the theories of quantum meruit, as well as tortious interference with advantageous economic relationships. Both plaintiff Robert Steinberg and defendant Stanley Schnapp are attorneys admitted to practice in New York. Nonparty Leon Baer Borstein also is an attorney, and was the preliminary executor of the estate of Isi Fischzang.

At least three documents relevant to this appeal appear in the record. In an undated and unsigned writing, Borstein advised that he had retained both Steinberg and Schnapp "as my attorneys with respect to all legal proceedings and asset administration concerning the wills, assets and estate of the late Isi Fischzang." Borstein also prepared a document dated September 2007, and entitled "Contract of Employment of Attorneys at Law." It provided that Steinberg was to serve as "trial counsel for all litigation issues," while Schnapp was designated as "the general counsel for the fiduciary and estate, with respect to all litigation proceedings concerning the wills, assets and estate of the late Isi Fischzang." There is also a June 2007 document, offered in reply papers from Schnapp, and signed by Borstein, in which Borstein also advises that he retained both Schnapp and Steinberg. In none of these documents, or in any other contained in the record, is there any suggestion of privity between Schnapp and Steinberg.

The arrangement among the attorneys did not last long, and on March 12, 2008 Steinberg instituted the action which gives rise to this appeal. He asserted two causes of action against Schnapp for quantum meruit and interference with advantageous economic relationships. In the quantum meruit cause of action he alleged that he had performed professional legal services for Schnapp at Schnapp's "special instance and request," but in connection with the Fischzang estate. He further alleged that he was orally retained by Schnapp, and that Borstein had confirmed the retainer in a writing. The services for which he seeks payment were services performed in conjunction with the estate, including two appearances in Surrogate's Court and negotiations with lawyers representing the decedent's widow.

In the claim for tortious interference Steinberg alleges that he was fired because the "underlying client" (Borstein) had become dissatisfied with the delays in the probate of the estate, but that Schnapp fired Steinberg to shift the blame for the

delays to Steinberg. Notably, Steinberg acknowledges that the "underlying client" could have requested his discharge "whimsically or capriciously or for any reason or for no reason, but the discharge would remain 'without cause.' " His concern that there is an intimation that his termination was "for cause" apparently provides much of the impetus for this litigation.

By motion dated June 4, 2008, after issue was joined, Schnapp moved, pursuant to CPLR 3212, for summary judgment dismissing the complaint, arguing that he had never retained plaintiff to perform any legal services, and that it was Borstein who had discharged Steinberg as special litigation counsel to the estate. Schnapp also noted that regardless of whether the discharge was for cause, Borstein had the right to terminate Steinberg at any time. In a reply affirmation Borstein himself confirmed that he had terminated Steinberg because he was unhappy with Steinberg's work product.

The court granted the motion, determining that Steinberg's claim for compensation lay against Borstein, who retained him. Plaintiff now challenges the court's dismissal of the complaint on the merits, and as premature, arguing that he has not been afforded discovery of relevant material evidentiary facts as to both of his claims.

The essence of Steinberg's argument to this Court with regard to the quantum meruit claim is that where two attorneys were retained by the preliminary executor, and one is designated trial counsel under the Rules of the Surrogate's Court, the attorney who is designated trial counsel (Steinberg) should be permitted to seek his legal fees from the attorney who is designated "Of Counsel" (Schnapp). As will be discussed, he does not explain why the preliminary executor, who signed the written retainer agreement, should not, at least, be a party to any such complaint. He further advances that the unique relationship of the two attorneys in this case requires the application of a different rule of law that must scrutinize whether one attorney has intentionally disparaged or wrongfully shifted blame onto the other.

Steinberg's quantum meruit claim against Schnapp is particularly perplexing, since the record not only contains the various documents prepared by Borstein memorializing his retention of Steinberg as "trial counsel for all litigation issues," but Steinberg's own admission (in his affidavit in response to the motion for summary judgment) that he had been retained by the estate. Further, there is nothing in the record to support

even an intimation that an attorney-client relationship existed between himself and Schnapp. Inchoate in his complaint and the averments in support is a veiled concern that he might face a legal malpractice action for actions for which he was not responsible. Why a claim in quantum meruit against co-counsel would forestall such an action is left unsaid, but, in any event, the only issue before us with regard to the quantum meruit claim is whether Steinberg has raised any questions of fact as to Schnapp's argument that he has failed to state a cause of action. We find none.

■ "[W]e are required to adjudicate [parties'] rights according to the unambiguous terms of the contract and therefore must give the words and phrases employed their plain meaning (*Laba v Carey*, 29 NY2d 302, 308 [1971]). The plain language of all the written documents presented in this record evidences that Steinberg's client was the estate, and not Schnapp. Certainly, "[i]f a client exercises the right to discharge an attorney after some services are performed but prior to the completion of the services for which the fee was agreed upon, the discharged attorney is entitled to recover compensation *from the client* measured by the fair and reasonable value of the completed services" (*Matter of Cooperman*, 83 NY2d 465, 473 [1994] [emphasis added]). In this case Steinberg has sought to recover compensation for his services from a party who did not have any obligation to compensate him—his co-counsel—with whom he was clearly not in privity. There is not even a suggestion that the estate is an undisclosed principal, in which case liability might attach to Schnapp, under time-honored principles (*see e.g. Ell Dee Clothing Co. v Marsh*, 247 NY 392, 397 [1928]).

■ In his allegations against Schnapp for tortious interference with advantageous economic relationship, Steinberg appears, in the first instance, to at least have brought his claim against a party who could theoretically be liable, were there any merit to the charges. Review of his complaint, however, compromises even this impression. At paragraph 35 he refers not only to the advantageous economic relationship between himself "and other persons and entities not parties hereto" (presumably, the estate), he also refers to "the advantageous economic relationship between Plaintiff and Defendant [i.e., himself and Schnapp]." It is evident that if there were an economic relationship, advantageous or otherwise, between Steinberg and Schnapp, Schnapp could not be liable in tort for interfering with his own economic relationship, but might be li-

able for breach of contract. As discussed above, there is nothing in the record to support a conclusion that a contractual relationship existed between Steinberg and Schnapp. Thus, any claim for tortious interference based upon contractual relations between Schnapp and him must necessarily fail.

The claim for interference with the estate contract is also unavailing. As the Court of Appeals has observed, "tortious interference" can take many forms, and the degree of protection upon which a plaintiff can rely "is defined by the nature of the plaintiff's enforceable legal rights" (*NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 621 [1996]). "Thus, where there is an existing, enforceable contract and a defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior" (*id.*). On the other hand, "[w]here there has been no breach of an existing contract, but only interference with prospective contract rights . . . plaintiff must show more culpable conduct on the part of the defendant" (*id.*).

In this case, the economic relationship at issue is one between an attorney and a client. "[A]s a general rule, where there is a contractual relationship between a lawyer and client, the client has the right 'to terminate the attorney-client relationship *at any time with or without cause*' " (*Atkins & O'Brien v ISS Intl. Serv. Sys.*, 252 AD2d 446, 447-448 [1998], quoting *Cooperman*, 83 NY2d at 472). Consequently, since Steinberg's contract was terminable at will, the economic relations which he claims he lost are derived from a nonbinding relationship. He is therefore required to demonstrate, as a general rule, that Schnapp's conduct constituted a crime or an independent tort (*Carvel Corp. v Noonan*, 3 NY3d 182, 190 [2004]). Allegations of mere self-interest or economic motivations will not suffice (*see Phillips v Carter*, 58 AD3d 528 [2009]).

Steinberg intimates in his complaint that Schnapp failed to communicate certain problems concerning the probate of the estate to Borstein, but left Steinberg to incur the client's dissatisfaction. His concerns are amplified in his affidavit in opposition to the motion for summary judgment, in which he suggests that any fees he earned are being withheld as a result of allegations made by Schnapp concerning the quality of his work. The specifics are not offered. At best, Steinberg is suggesting that Schnapp made an inaccurate statement about the quality of

Steinberg's work, which statement led Borstein to terminate the attorney relationship, a relationship that is terminable at will, in any event. Such statements would be neither tortious nor criminal.

As an at-will employee Steinberg may not "evade the employment-at-will rule by recasting [his] cause of action in the garb of tortious interference with [his] employment" (*Marino v Vunk*, 39 AD3d 339, 340 [2007], citing *Ingle v Glamore Motor Sales*, 73 NY2d 183, 189 [1989]), particularly in the absence of any support in the record for his contention that Schnapp resorted to "the requisite unlawful means or malicious intent to sustain such a claim" (*Interweb, Inc. v iPayment, Inc.*, 12 AD3d 164, 165 [2004], *lv dismissed* 4 NY3d 776 [2005]; *see also Snyder v Sony Music Entertainment*, 252 AD2d 294, 299-300 [1999] [to establish a claim for tortious interference with prospective economic advantage, "a plaintiff must demonstrate that the defendant's interference with its prospective business relations was accomplished by 'wrongful means' or that defendant acted for the sole purpose of harming the plaintiff"]). The generalized contentions about what Schnapp might have said do not raise a factual issue as to whether his conduct was actionable.

██ Finally, Steinberg's request for additional discovery, when he has offered nothing but speculative and conclusory averments to substantiate his contention that Schnapp tortiously interfered with his contract with the estate, must be rejected. "A grant of summary judgment cannot be avoided by a claimed need for discovery unless some evidentiary basis is offered to suggest that discovery may lead to relevant evidence" (*Bailey v New York City Tr. Auth.*, 270 AD2d 156, 157 [2000]). Steinberg's vague claims that he was made to bear the blame for purported problems in probating the estate, whatever they might be, do not meet the minimum showing necessary to forestall summary judgment.

Accordingly, the judgment of the Supreme Court, New York County (Jane S. Solomon, J.), entered October 27, 2008, dismissing the complaint, should be affirmed, without costs, and the appeal from the order of the same court and Justice, entered on or about September 16, 2008, which granted defendant's motion for summary judgment, should be dismissed, without costs, as subsumed in the appeal from the judgment.

Saxe, J.P., Buckley, Acosta and Freedman, JJ., concur.

Judgment, Supreme Court, New York County, entered October 27, 2008, affirmed, without costs, and appeal from order, same court, entered on or about September 16, 2008, dismissed, without costs, as subsumed in the appeal from the judgment.